United States District Court
for the
Southern District of Florida

| John Nguyen and Jennifer Nguyen, individually, as personal representatives of the Estate of R.N., and as parents and natural guardians of R.N., Plaintiffs, | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 16-24930-Civ-Scola |
|---|---|---|
| v. | | |
| Royal Caribbean Cruises, Ltd., and others, Defendants. | | |

### Order on Defendant's Motion to Dismiss

Plaintiffs John Nguyen and Jennifer Nguyen bring this suit individually and as personal representatives of the estate of R.N., a deceased minor, against Royal Caribbean Cruises, Ltd. ("Royal Caribbean") and the nurses and doctors on board Royal Caribbean's ship, the Liberty of the Seas, on or about December 21, 2015. This matter is before the Court on Defendant Royal Caribbean's motion to dismiss Counts Six, Nine, and Ten of the Complaint, and strike the Plaintiffs' claims for punitive damages in Counts One, Two, and Three of the Complaint. (ECF No. 6). For the reasons set forth in this Order, the Court **grants in part** the Defendant's motion to dismiss.

1. **Background**

The Complaint alleges that, on or about December 21, 2015, the Plaintiffs were on board Royal Caribbean's ship, Liberty of the Seas, with their two children. (Compl. ¶¶ 21-22, ECF No. 1.) Jennifer Nguyen took her eight-year-old son, R.N., to the H2O Zone Waterpark on board the ship. (*Id.* ¶ 33.) According to the Complaint, the H2O Zone Waterpark is an interactive water park for kids and families that has geysers, sculpted fountains, waterfalls, and a small pool, among other things. (*Id.* ¶ 23.) The pool has a depth of five feet seven inches, and is surrounded by a walkway covered in water that is eight inches deep. (*Id.* ¶ 25.) At the time that Jennifer Nguyen and her son were at the H2O Zone Waterpark, there were no lifeguards present, no crew members enforcing the rules and policies applicable to the water park, and no lifesaving medical equipment at or near the pool deck. (*Id.* ¶¶ 29-30.) When Jennifer Nguyen and R.N. were at the H2O Zone Waterpark, the ship encountered rough weather, causing the boat to rock and pool water to splash out of the pools. (*Id.* ¶ 32.)

Jennifer Nguyen was sitting in a lounge chair adjacent to the waterpark when she saw R.N.'s lifeless body being pulled out of the pool in the H2O Zone Waterpark. (*Id.* ¶ 34-35.) A passenger began performing CPR on R.N., but a crew member told the passenger to stop when the passenger stated that she was not a doctor. (*Id.* ¶ 35.) Approximately five minutes after R.N. was pulled out of the pool, the shipboard doctor arrived and performed CPR on R.N. for more than 60 minutes. (*Id.* ¶ 36.) No lifesaving medical equipment was used to revive R.N. (*Id.*) John Nguyen was in his stateroom, and at some point after R.N. was pulled from the pool, he was called and arrived at the scene. (*Id.* ¶ 38.) Both John and Jennifer Nguyen witnessed the efforts to save R.N.'s life. (*Id.* ¶¶ 37-38.)

On November 28, 2016, the Plaintiffs filed this suit against Royal Caribbean, asserting various claims for negligence against Royal Caribbean and the shipboard doctors and nurses under the Death on the High Seas Act, 46 U.S.C. §§ 30301-30308 ("DOHSA"), as well as claims for intentional and negligent infliction of emotional distress with respect to John and Jennifer Nguyen. The Plaintiffs request all damages recoverable under DOHSA and the law applicable to claims for intentional and negligent infliction of emotional distress, and punitive damages.

Royal Caribbean has moved to strike the Plaintiffs' requests for punitive damages with respect to their DOHSA claims, and dismiss the Plaintiffs' claims for intentional and negligent infliction of emotional distress. (Mot. to Dismiss at 1, ECF No. 6.)

## 2. Legal Standard

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that

states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### 3. Analysis
#### A. Punitive Damages for Counts One, Two, and Three

Defendant Royal Caribbean has moved to strike the Plaintiffs' claims for punitive damages with respect to Counts One, Two, and Three of the Complaint, because those counts are brought under DOHSA, which does not permit punitive damages. (Mot. to Dismiss at 14-16, ECF No. 6.) In its opposition to the Defendant's motion to dismiss, the Plaintiffs acknowledged that punitive damages are not recoverable under DOHSA, and stated that the incorporation by reference of the request for punitive damages into Counts, One, Two, and Three was a typographical error. (Pl.'s Resp. at 2-3, ECF No. 14.) The Plaintiffs requested leave to amend the Complaint to correct the error. (*Id.* at 2.) The Court therefore denies as moot the Defendant's motion to strike the Plaintiffs' claim for punitive damages in Counts One, Two, and Three of the Complaint, and grants the Plaintiffs leave to amend the Complaint to correct the typographical errors.

#### B. Intentional Infliction of Emotional Distress

Federal maritime law applies to actions for torts committed aboard a ship sailing in navigable waters. *See, e.g., Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989). Courts sitting in admiralty typically look to the standards set out in the Restatement (Second) of Torts § 46 (1965) as well as state law to evaluate claims for intentional infliction of emotional distress ("IIED"). *See, e.g., Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 841 (9th Cir. 2002) (citations omitted) (noting that since there is no maritime law concerning IIED claims, courts regularly employ the Restatement (Second) of Torts to evaluate IIED claims in federal maritime cases); *Stires v. Carnival Corp.*, 243 F.Supp.2d 1313, 1319 (M.D. Fla. 2002) (citing to both the Restatement (Second) of Torts and Florida state law in case asserting claim for IIED for tort that occurred on a cruise ship). Section 46 of the Restatement (Second) of Torts states, in relevant part, that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." To state a claim for IIED under Florida law, a plaintiff must show: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) that the conduct caused emotional

distress; and (4) that the distress was severe. *Nettles v. City of Leesburg Police Dep't*, 415 Fed. App'x. 116, 122 (11th Cir. 2010) (quoting *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990)). Here, Royal Caribbean argues that the Plaintiffs' allegations fail to rise to the level of outrageousness necessary to state a claim for IIED. (Mot. to Dismiss at 4-5, ECF No. 15.)

"Outrageous" conduct is that which "goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *Rubio v. Lopez*, 445 Fed. App'x. 170, 175 (11th Cir. 2011). The Restatement of Torts and Florida courts have stated that:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

Restatement (Second) of Torts, § 46, cmt. d; *Brown v. Zaveri*, 164 F. Supp. 2d 1354, 1362 (S.D. Fla. 2001) (Lenard, J.) (citations omitted).

Notably, the cause of action for IIED is "sparingly recognized by the Florida courts." *Vamper v. United Parcel Service, Inc.*, 14 F.Supp.2d 1301, 1306 (S.D. Fla. 1998) (King, J.). A plaintiff alleging IIED faces an extremely high burden, as Florida courts have repeatedly found a wide spectrum of behavior insufficiently "outrageous." A brief survey of Florida and maritime cases addressing claims of IIED underscores this point. *See, e.g., Rubio v. Lopez*, 445 Fed. App'x. at 175 (finding failure to allege sufficient outrageous conduct where deputy sheriff hobble-tied arrestee on black asphalt pavement in sun, resulting in second-degree burns to face and chest); *Wallis*, 306 F.3d at 842 (finding no outrageous conduct where crew member on cruise ship remarked in the plaintiff's hearing after her husband fell overboard that her husband was probably dead and that his body would be sucked under the ship, chopped up by the propellers, and would probably not be recovered); *Garcia v. Carnival Corp.*, 838 F.Supp.2d 1334, 1339 (S.D. Fla. 2012) (Moore, J.) (finding no outrageous conduct where crew members assaulted cruise passenger and prevented her from leaving her room for a period of time); *Vamper*, 14 F. Supp. at 1306–07 (finding no outrageous conduct where defendants fabricated reckless driving charge against plaintiff, called him the "n" word, threatened him with termination, and physically struck him on ankle).

The Complaint alleges that Royal Caribbean deliberately and/or recklessly inflicted emotional distress on Jennifer and John Nguyen by failing to utilize lifeguards at swimming pools onboard its ships which are designed and marketed for young children, posting inadequate signage to advise

passengers of the lack of lifeguards, responding to R.N.'s drowning without any urgency and in an unreasonable amount of time, and failing to have adequate medical equipment or lifesaving devices near the pool. (Compl. ¶¶ 86, 89, ECF No. 1.) The Complaint alleges that Royal Caribbean's failure to post lifeguards at its pools despite the fact that numerous children have drowned or nearly drowned on board Royal Caribbean's ships, and other cruise ships, is intentional and outrageous. (*Id.* ¶ 87.) In support of its allegation that Royal Caribbean's conduct is outrageous, the Plaintiffs allege that Disney Cruise Lines employs lifeguards on its cruise ships. (*Id.*)

In its motion to dismiss, Royal Caribbean cites to *Blair v. NCL (Bahamas) Ltd.*, No. 16-21446, 2016 WL 5717560 (S.D. Fla. Sept. 29, 2016) (Seitz, J.), in support of its argument that the Plaintiffs' allegations do not rise to the requisite level of outrageousness. (Mot. to Dismiss at 7-8, ECF No. 6.) In *Blair*, the plaintiff's child drowned in a pool on a cruise ship, and the plaintiff saw her child's lifeless body being pulled from the pool. 2016 WL 5717560, at *1-2. In support of the plaintiff's claims for IIED, the plaintiff alleged that the defendant's conduct was outrageous because it failed to keep lifesaving equipment on the pool desk; failed to employ lifeguards; failed to have staff stationed on the pool deck who were prepared for a medical drowning emergency; and medical personnel failed to arrive promptly on the scene. *Id.* at *4. In dismissing the plaintiff's IIED claims, Judge Seitz stated:

> While the consequences of these actions were heartbreaking, such conduct simply does not reach the level required for an intentional infliction of emotional distress claim. As NCL points out, many hotel pools do not have lifeguards or medical personnel nearby. Thus, given how common it is not to have lifeguards or medical personnel at pools, their absence must be generally accepted by society. . . Furthermore, Plaintiff has not cited to any statutes or other legal authority indicating that the law requires the presence of lifeguards or medical personnel near pools.

*Id.*

In their response to the motion to dismiss, the Plaintiffs attempt to distinguish *Blair* by arguing that the drowning in *Blair* occurred at the primary shipboard pool, which was intended for both adults and children, whereas here the drowning occurred at a shipboard waterpark that specifically catered to children. (Pl.'s Resp. at 6-8, ECF No. 14.) The Plaintiffs included pictures of the pool at issue in *Blair* and the pool at issue here. (*Id.* at 7.) The Court notes that the pool at issue in *Blair* appears to have had a water slide, which is a common feature of waterparks. (*See id.*) The Plaintiffs also assert that waterparks in the United States employ lifeguards, as do many properties owned by Disney Hotel

and Resorts in Florida and four properties owned by Universal Orlando Lowes. (*Id.* at 9.) However, the Plaintiffs noted in the Complaint that every cruise line other than Disney "refuses to station lifeguards and/or crewmembers with First Aid and/or CPR training at its shipboard pools." (Compl. ¶ 20, ECF No. 1.) The Plaintiffs have not cited to any statutes or legal authority indicating that the law requires the presence of lifeguards either at pools or waterparks.

The alleged conduct fails to rise to the level of outrageousness required by the Restatement (Second) of Torts and Florida state law. Even construing the facts in the light most favorable to the Plaintiffs, Royal Caribbean's alleged conduct is not such that it "goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *See Rubio*, 445 Fed. App'x. at 175. Based on the allegations in the Complaint, it is common for cruise ships not to employ lifeguards, and the Plaintiffs have cited to no legal authority requiring cruise ships to employ lifeguards. As in *Blair*, the Plaintiffs' allegations do not rise to the level of outrageousness required by the applicable case law. Therefore, the Court grants the Defendant's motion to dismiss Count Six of the Complaint.

### C. Negligent Infliction of Emotional Distress

A claim for negligent infliction of emotional distress ("NIED") requires an adequately pled underlying claim of negligence. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). In addition, an NIED claim "requires mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another. . . ." *Id.* at 1337-38 (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 544 (1994)). Federal maritime law utilizes the "zone of danger" test. *Id.* The zone of danger test permits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct. *Tassinari v. Key West Water Tours, L.C.*, 480 F.Supp.2d 1318, 1323 (S.D. Fla. 2007) (Moore, J.) (citing *Consol. Rail Corp.*, 512 U.S. at 547-48). In addition, the zone of danger test permits recovery for NIED if "a plaintiff is placed in immediate risk of physical harm by defendant's negligent conduct." *Chaparro*, 693 F.3d at 1337-38 (internal quotations and citations omitted).

The Plaintiffs admitted in their response to the motion to dismiss that they have not sufficiently stated a claim for NIED because they were not in the zone of danger at the time of R.N.'s drowning. (Pl.'s Resp. at 2, ECF No. 14.) Instead, the Plaintiffs urge the Court to adopt the "relative bystander" test employed by some circuits. (*Id.* at 4.) However, this Court is bound by Eleventh Circuit precedent applying the zone of danger test, and therefore declines to adopt the relative bystander test. *See Blair*, 2016 WL 5717560 at *5 (declining to apply the relative bystander test and noting that the court "is bound by the

rulings of the Eleventh Circuit, which. . .has made clear that the applicable test is the zone of danger.").

### D. Conclusion

Accordingly, the Court **grants in part** the Defendant's motion to dismiss (ECF No. 15). The Court **dismisses with prejudice** Counts Six, Nine, and Ten of the Complaint. The Court **denies as moot** the Defendant's motion to strike the Plaintiffs' request for punitive damages with respect to Counts One, Two, and Three of the Complaint, and **grants** the Plaintiffs leave to amend the Complaint solely to correct the typographical errors related to their requests for punitive damages. The Plaintiffs must file their amended complaint on or before **April 25, 2017**.

**Done and ordered** in chambers, at Miami, Florida, on April 13, 2017.

_____
Robert N. Scola, Jr.
United States District Judge